SLIP OPINION

Cite as 2013 Ark. 432

# SUPREME COURT OF ARKANSAS

No. CR-12-651

| | |
|---|---|
| RICHARD BURKE PAIGE<br><div align="right">APPELLANT</div><br>V.<br><br>STATE OF ARKANSAS<br><div align="right">APPELLEE</div> | **Opinion Delivered** October 31, 2012<br><br>PRO SE APPEAL FROM THE FRANKLIN COUNTY CIRCUIT COURT, NORTHERN DISTRICT, 24CR-11-65, HON. WILLIAM M. PEARSON, JUDGE, and PRO SE MOTION FOR APPOINTMENT OF COUNSEL AND TO STAY PROCEEDINGS<br><br><br>AFFIRMED; MOTION MOOT. |

## PER CURIAM

In 2012, appellant Richard Burke Paige entered a negotiated plea of nolo contendere to battery in the first degree and was sentenced as a habitual offender to 132 months' imprisonment. Imposition of an additional term of 72 months was suspended. Under the terms of the plea agreement, a charge pending against appellant for aggravated residential burglary was not prosecuted.

Appellant subsequently filed in the trial court a timely, verified pro se petition for postconviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1 (2012). An evidentiary hearing was held on the petition, and it was denied. Appellant brings this appeal. He also asks by pro se motion that counsel be appointed to represent him and that the proceedings be stayed. Our jurisdiction is pursuant to Rule 37 and Arkansas Supreme Court Rule 1–2(a)(8) (2012).

This court has held that it will reverse the circuit court's decision granting or denying

postconviction relief only when that decision is clearly erroneous. *Pankau v. State*, 2013 Ark. 162; *Banks v. State*, 2013 Ark. 147. A finding is clearly erroneous when, although there is evidence to support it, the appellate court, after reviewing the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 494.

We find no error and affirm the trial court's order. Because we find no merit to the appeal, the motion for appointment of counsel and to stay the appeal, which is grounded on appellant's erroneous assertion that he has a right to appointment of counsel in his Rule 37.1 proceeding, is moot.[1]

In his petition under the Rule, appellant contended that he was not afforded effective assistance of counsel at trial and that the trial court erred in not advising him when the plea was entered that he would not be eligible for parole. When considering an appeal from a trial court's denial of a Rule 37.1 petition, the sole question presented is whether, based on a totality of the evidence under the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), the trial court clearly erred in holding that counsel's

---

[1] Appellant relies in the motion on *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) and *Trevino v. Thaler*, 132 S. Ct. 1309 (2012) to support his assertion that he is entitled to appointment of counsel. *Martinez* held that, when state law requires a prisoner to use a collateral attack rather than a direct appeal to raise a claim that his trial attorney was not effective under the Sixth Amendment, the prisoner's failure to comply with state rules in bringing his collateral attack on the judgment will no longer bar a federal judge from granting habeas relief on that claim, if the prisoner had no attorney to represent him in the collateral proceeding or that attorney was ineffective and if the petition filed in the state court had a meritorious claim. *Trevino* clarified aspects of *Martinez*, but it did not require states to provide counsel to every petitioner in a collateral attack on a judgment. Accordingly, neither the ruling in *Martinez* nor the ruling in *Trevino* dictates that counsel must be appointed for appellant in this appeal.

SLIP OPINION

performance was not ineffective. *Taylor v. State*, 2013 Ark. 146, ___ S.W.3d ___.

The benchmark for judging a claim of ineffective assistance of counsel must be "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. Pursuant to *Strickland,* we assess the effectiveness of counsel under a two-prong standard. First, a petitioner raising a claim of ineffective assistance must show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Williams v. State*, 369 Ark. 104, 251 S.W.3d 290 (2007). A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Harrison v. State*, 2012 Ark. 198, 404 S.W.3d 830.

Second, the petitioner must show that counsel's deficient performance so prejudiced petitioner's defense that he was deprived of a fair trial. *Holloway v. State*, 2013 Ark. 140, ___ S.W.3d ___. A petitioner making an ineffective-assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Abernathy v. State*, 2012 Ark. 59, 386 S.W.3d 477 (per curiam). The petitioner must show that there is a reasonable probability that, but for counsel's errors, the fact-finder would have had a reasonable doubt respecting guilt, i.e., the decision reached would have been different absent the errors. *Howard v. State*, 367 Ark. 18, 238 S.W.3d 24 (2006). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.* The language "the outcome of the trial," refers not only to the finding of guilt or innocence, but also to possible prejudice in sentencing. *Id.* Unless a petitioner makes both showings, it cannot be said that the conviction

3

SLIP OPINION

resulted from a breakdown in the adversarial process that renders the result unreliable. *Id.* "[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Appellant's claims of ineffective assistance of counsel concerned two matters. First, he contended that he would not have accepted the plea bargain offered him by the prosecution if he had known that he was being charged as a habitual offender. Secondly, he contended that he would not have entered the plea had he known that he would not be eligible for parole pursuant to Act 1805 of 2001, codified as Arkansas Code Annotated section 16-93-609(b)(1) (Repl. 2006). In pertinent part, Act 1805 provides that any person who commits a violent felony, subsequent to August 13, 2001, who has previously been found guilty of a violent felony shall not be released on parole. Ark. Code Ann. § 16-93-609(b)(1).

With respect to appellant's allegation of ineffective assistance of counsel for failure to advise him that he was being charged as a habitual offender, appellant testified at the evidentiary hearing that he had prior convictions for first-degree murder and six other felonies and that he had read the terms of the plea bargain in a letter that set out that he would be sentenced as a habitual offender. When the State confronted appellant at the evidentiary hearing with the letter, appellant conceded that he had not been willing to go before a jury with such a prior record. Counsel testified at the hearing that he had discussed the habitual-offender status with appellant and that appellant was very concerned about his prior crimes being used against him if he went to trial. In light of his testimony, appellant did not establish that he was misled by counsel and

4

induced to entered a plea that he would not have entered otherwise.

As to appellant's claim that counsel failed to advise him that he would be subject to Act 1805, counsel testified at the hearing that he did not advise appellant at all about parole eligibility. When appellant questioned counsel during the hearing as to whether counsel had informed appellant that he would not be eligible for parole, counsel answered, "No, I didn't know that you would be subject to any provision that would require you to do a hundred percent of the sentence, and I didn't advise you of that." He further testified, "And I didn't advise you that you wouldn't, either, right?" Appellant replied, "I know." Appellant further testified that he was aware that, if he had rejected the plea agreement and stood trial on the original charges, he could have been sentenced to consecutive sentences of 432 months' imprisonment. He admitted that he did not want to take a chance with a jury trial under those circumstances.

This court has held that there is no constitutional requirement for defense counsel to inform his client about parole eligibility and that the failure to impart such information does not fall outside the range of competence demanded of attorneys in criminal cases. *See Cumming v. State*, 2011 Ark. 410 (per curiam) (citing *Buchheit v. State*, 339 Ark. 481, 6 S.W.3d 109 (1999) (per curiam)); *Haywood v. State*, 288 Ark. 266, 704 S.W.2d 168 (1986). In *Buchheit*, we acknowledged the decision in *Hill v. Lockhart*, 894 F.2d 1009 (8th Cir. 1990), where the Court of Appeals for the Eighth Circuit granted Hill's habeas-corpus petition on the ground that counsel made positive misrepresentations regarding parole eligibility and that counsel's assurances induced Hill's acceptance of the negotiated plea. Distinguishing *Hill*, we concluded that Buchheit's

5

counsel was not ineffective for failing to advise the defendant that he would be required to serve seventy percent of his sentence under the law applicable to his sentence, because counsel made no representations regarding parole eligibility. *See Buchheit*, 339 Ark. 481, 6 S.W.3d 109; *see also Oliverez v. State*, 2012 Ark. 24 (per curiam) (There is a distinction between cases where counsel made positive assertions to the defendant concerning parole eligibility and cases where no advice was given.). As argued here, at most, appellant's claim is only that he was left with an impression that he would be eligible for parole, not that counsel made a positive misrepresentation about parole eligibility.[2] As such, the trial court did not clearly err in denying relief on the allegation concerning parole eligibility.

Appellant's final argument on appeal is that his plea was not intelligently and voluntarily made because it was based on misinformation concerning "sentencing consequences." As it is argued in the appellant's brief, the argument amounts to a continuation of appellant's claim that he was not afforded effective assistance of counsel. Because appellant has failed to demonstrate that counsel made any representations to him regarding the length of his sentence, he has not shown that the plea was not a valid plea.

Affirmed; motion moot.
*Richard Burks Paige*, pro se appellant.
*Dustin McDaniel*, Att'y Gen., by: *Pamela A. Rumpz*, Ass't Att'y Gen., for appellee.

---

[2]In his Rule 37.1 petition, appellant also alleged that the trial court had a duty under Arkansas Rule of Criminal Procedure 24.4 (2012) to advise him on parole eligibility. On appeal, appellant's argument focuses on his attorney's failure to advise him properly concerning parole, but, to the extent that appellant's argument was intended to encompass the duty of the court to provide information to appellant on parole eligibility, the allegation has no merit. Rule 24.4 did not require the court to explain parole laws to appellant. *See Smith v. State*, 300 Ark. 291, 778 S.W.2d 924 (1989).